# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

PUBLIC CITIZEN, *et al.*,

    Plaintiffs,

    v.

ELISABETH DEVOS, Secretary, U.S.
Department of Education, *et al.*,

    Defendants.

Civil Action No. 1:19-cv-986-RDM

## PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Pursuant to Federal Rules of Civil Procedure 7(b) and 65, Plaintiffs Public Citizen, Public Citizen Foundation, and David Halperin hereby move for a preliminary injunction against Defendants Elisabeth DeVos, in her official capacity as Secretary of Education, and the Department of Education, on the grounds that Plaintiffs are likely to succeed on the merits of their claim, Plaintiffs will suffer irreparable harm absent an injunction, and the balance of equities and the public interest support issuance of a preliminary injunction. In support of this motion, Plaintiffs submit the accompanying Memorandum of Points and Authorities in Support of Plaintiffs' Motion for a Preliminary Injunction; declarations by Robert Weissman, Patrick Llewellyn, and David Halperin; and a proposed order.

May 24, 2019                          Respectfully submitted,

                                      /s/ Nandan M. Joshi
                                      Nandan M. Joshi (DC Bar No. 456750)
                                      Allison M. Zieve (DC Bar No. 424786)
                                      Scott L. Nelson (DC Bar No. 413548)
                                      Public Citizen Litigation Group
                                      1600 20th Street NW
                                      Washington, DC 20009
                                      (202) 588-1000

                                      *Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PUBLIC CITIZEN, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:19-cv-986-RDM |
| ELISABETH DEVOS, Secretary, U.S. Department of Education, *et al.*, | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR A PRELIMINARY INJUNCTION**

Nandan M. Joshi (DC Bar No. 456750)
Allison M. Zieve (DC Bar No. 424786)
Scott L. Nelson (DC Bar No. 413548)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ........................................................................................................................1

BACKGROUND ..........................................................................................................................1

    A.   Public Citizen's Criticisms of Secretary DeVos and the Department of
         Education ..........................................................................................................................1

    B.   The Department's Blocking of Public Citizen's Voice on its Networks ........................4

ARGUMENT ...............................................................................................................................7

I.   Plaintiffs are likely to prevail on the merits of their First Amendment claim.........................7

II.  Plaintiffs will suffer irreparable injury absent a preliminary injunction. ...............................14

III. The balance of equities and the public interest support issuance of a
     preliminary injunction. .........................................................................................................15

CONCLUSION...........................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Archdiocese of Washington v. Washington Metropolitan Area Transit Authority*,
 897 F.3d 314 (D.C. Cir. 2018) ................................................................ 14

*Ashcroft v. ACLU*,
 535 U.S. 564 (2002) ................................................................................ 10

*Board of Airport Commissioners of Los Angeles v. Jews for Jesus, Inc.*,
 482 U.S. 569 (1987) ................................................................................ 12

*Brown v. Entertainment Merchants Ass'n*,
 564 U.S. 786 (2011) ............................................................................. 9, 10

*City of Lakewood v. Plain Dealer Publishing Co.*,
 486 U.S. 750 (1988) ................................................................................ 11

*Elrod v. Burns*,
 427 U.S. 347 (1976) ................................................................................ 14

*First National Bank of Boston v. Bellotti*,
 435 U.S. 765 (1978) ................................................................................ 15

*Garrison v. Louisiana*,
 379 U.S. 64 (1964) .................................................................................... 8

*Lane v. Franks*,
 573 U.S. 228 (2014) .................................................................................. 8

\* *Members of City Council of Los Angeles v. Taxpayers for Vincent*,
 466 U.S. 789 (1984) .......................................................................... 1, 11, 12

\* *Minnesota Voters Alliance v. Mansky*,
 138 S. Ct. 1876 (2018) ..................................................................... 8, 11, 12, 13

*National Institute of Family and Life Advocates v. Becerra*,
 138 S. Ct. 2361 (2018) .............................................................................. 9

*Pacific Gas & Electric Co. v. Public Utilities Commission of California*,
 475 U.S. 1 (1986) .................................................................................... 15

*Packingham v. North Carolina*,
 137 S. Ct. 1730 (2017) .............................................................................. 9

*Perry Education Ass'n v. Perry Local Educators' Ass'n*,
 460 U.S. 37 (1983) .................................................................................. 12

ii

*Police Department of Chicago v. Mosley*,
   408 U.S. 92 (1972) ................................................................................................ 8

*Pursuing America's Greatness v. Federal Election Commission*,
   831 F.3d 500 (D.C. Cir. 2016) ........................................................................... 14

\*   *Reed v. Town of Gilbert*,
   135 S. Ct. 2218 (2015) ............................................................................... 8, 9, 10

*Reno v. ACLU*,
   521 U.S. 844 (1997) ............................................................................................ 9

*Rosenberger v. Rector and Visitors of University of Virginia*,
   515 U.S. 819 (1995) ............................................................................................ 9

*Roth v. United States*,
   354 U.S. 476 (1957) ............................................................................................ 8

*Snyder v. Phelps*,
   562 U.S. 443 (2011) ............................................................................................ 8

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ...................................................................................... 9, 11

*Turner Broadcasting System, Inc. v. FCC*,
   512 U.S. 622 (1994) ............................................................................................ 8

*Winter v. Natural Resources Defense Council, Inc.*,
   555 U.S. 7 (2008) ............................................................................................... 7

## INTRODUCTION

The First Amendment "forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984). Yet Defendants have done exactly that to Public Citizen. The Department of Education and Secretary of Education Elisabeth DeVos (collectively, the Department) have blocked Internet users on the Department's networks from accessing www.citizen.org, the website of plaintiffs Public Citizen and Public Citizen Foundation (collectively, Public Citizen). Meanwhile, the Department grants users access to numerous other websites that are indistinguishable from Public Citizen's for First Amendment purposes.

Public Citizen, along with one of its members who uses the Department's guest Wi-Fi network to visit Public Citizen's website, filed this action for declaratory and injunctive relief to stop the Department from blocking access to citizen.org. By this motion, Plaintiffs seek a preliminary injunction to ensure that citizen.org is available to users on the Department's networks until this Court can enter final judgment in this case. As explained below, all of the preliminary-injunction factors are satisfied in this case: (1) Plaintiffs are likely to prevail on their claim that the Department's blocking of www.citizen.org violates the First Amendment, (2) Plaintiffs are suffering irreparable First Amendment harm due to the ongoing restrictions on the free flow of Public Citizen's speech, (3) the balance of equities weighs in favor of a preliminary injunction, and (4) the public interest favors issuance of an injunction.

## BACKGROUND

### A.   Public Citizen's Criticisms of Secretary DeVos and the Department of Education

Public Citizen is a national non-profit public-interest organization founded in 1971 to champion the public interest in the halls of power by defending democracy, resisting corporate power, and working to ensure that government works for the people. Weissman Decl. ¶ 2. To

achieve these goals, Public Citizen engages in lobbying, litigation, administrative advocacy, research, and public education on a broad range of issues, including consumer rights in the marketplace, financial regulation, and corporate accountability. *Id.* Public Citizen does not participate in partisan political activities or endorse candidates for elected office. *Id.* ¶ 5.

In carrying out its mission, Public Citizen has criticized, and taken action against, the actions and inactions of federal agencies, in both the current administration and earlier ones. In February 2017, for example, Public Citizen challenged President Trump's executive order that directed federal agencies to repeal two regulations for each new rule they issued.[1] Public Citizen has also called for an ethics investigation into the acting secretary for the Department of Interior.[2] And last summer, Public Citizen issued a report criticizing the current administration's failure to take adequate action against corporate crime and wrongdoing.[3]

Public Citizen's criticisms and actions extend to the Department under Secretary DeVos's leadership, as well as that of her predecessors. The Department is charged with an important role in promoting the success and well-being of America's students by "support[ing] programs in every area and level of education from preschool through postdoctoral research."[4] The Department, for example, is responsible for "establishing policies related to federal education funding, including

---

[1] *See Public Citizen v. Trump*, No. 1:17-cv-0253-RDM (D.D.C. filed Feb. 8, 2017).

[2] *Public Citizen Calls on Interior Department to Investigate Whether Acting Secretary Bernhardt Violated Trump's Executive Order on Ethics* (Feb. 12, 2019), https://www.citizen.org/news/ public-citizen-calls-on-interior-department-to-investigate-whether-acting-secretary-bernhardt-violated-trumps-executive-order-on-ethics/ (last visited May 23, 2019).

[3] *Corporate Impunity: "Tough of Crime" Trump is Weak on Corporate Crime and Wrongdoing* (July 2018), https://www.citizen.org/wp-content/uploads/migration/corporate-enforcement-public-citizen-report-july-2018.pdf.

[4] *U.S. Dep't of Education, FY 2018 Agency Financial Report* 3 (Nov. 15, 2018), https://www2.ed.gov/about/reports/annual/2018report/agency-financial-report.pdf.

distributing funds, collecting on student loans, and using data to monitor the use of funds."[5] Public Citizen has taken a variety of actions expressing its view that many of the Department's actions have fallen short of what is needed to serve America's students effectively.

For example, in December 2018, Public Citizen released a report entitled *Rewriting the TEACH Grant Rules: Lessons from a History of Mismanagement* (TEACH Grant Report), https://www.citizen.org/system/files/case_documents/teach_report.pdf. The TEACH Grant Report addressed the federal TEACH Grant program, which is designed to provide grants to aspiring teachers who commit to "teach[ing] in high-need fields and schools for at least four of the first eight years following their course of study." *Id*. at 1. The grants convert to loans if the recipients do not fulfill that obligation or fail to satisfy certain paperwork requirements. *Id*. The TEACH Grant Report revealed that the Department incorrectly converted the TEACH grants of thousands of teachers to loans, which "can have a devastating effect on teachers' financial lives." *Id*. Many conversions "resulted from mistakes by the Department and the student loan servicer, or from paperwork mishaps when a grant recipient missed a certification deadline imposed by the Department." *Id*. at 2. In light of these findings, Public Citizen described the TEACH Grant program as "rife with mismanagement."[6]

Public Citizen has also engaged in advocacy before the Department and the courts to ensure the Department's compliance with its responsibilities under the law. Public Citizen has represented individual borrowers against the Department after it unlawfully attempted to delay implementation of the 2016 Borrower Defense Rule, a rule designed, among other things, to give student-loan

---

[5] *Id*.

[6] *TEACH Grant Program Plagued by Mismanagement, Inadequate Oversight*, Press Release (Dec. 10, 2018), https://www.citizen.org/news/teach-grant-program-plagued-by-mismanagement-inadequate-oversight/ (last visited May 23, 2019).

borrowers who are the victims of misrepresentation and fraud the right to seek cancellation of their loans. The litigation resulted in an order setting aside the Department's delay actions. *See Bauer v. DeVos*, 325 F. Supp. 3d 74, 81, 110–11 (D.D.C. 2018); *see also California Ass'n of Private Postsecondary Schools v. DeVos*, No. 1:17-cv-999-RDM (D.D.C.) (Public Citizen representing individual borrowers who intervened as defendants to defend the Borrower Defense Rule against industry challenge).

Administratively, Public Citizen has submitted comments to the Department opposing its proposal to rescind the Borrower Defense Rule through rulemaking.[7] And Public Citizen has provided public comments in negotiated rulemaking proceedings at the Department with respect to the TEACH Grant program. Llewellyn Decl. ¶ 2. Public Citizen also has submitted Freedom of Information Act (FOIA) requests to the Department and has sued when the Department failed to comply with its disclosure obligations under FOIA. *See*, *e.g.*, *Public Citizen v. Department of Education*, No. 1:18-cv-1047-CKK (D.D.C. filed May 3, 2018).

**B.   The Department's Blocking of Public Citizen's Voice on its Networks**

Public Citizen relies on its website to disseminate information about its mission, activities, and work product to members, reporters, and the general public. Weissman Decl. ¶ 4. Individuals who visit citizen.org can obtain information about the actions of the current and past administrations, view and download the TEACH Grant Report, and learn about Public Citizen's litigation against the Department and other federal agencies. Public Citizen makes information on its website freely available to every individual who has access to the Internet. *Id.*

---

[7] *Comments on Department of Education's Proposed Borrower Defense Rule* (Aug. 31, 2018), https://www.citizen.org/article/comments-on-department-of-educations-proposed-borrower-defense-rule/ (last visited May 23, 2019).

In February 2019, Public Citizen learned that the information on its website was not freely available to users who accessed the Internet through networks operated by the Department. On February 22, 2019, Patrick Llewellyn, a Public Citizen attorney, attended a meeting at the Department's facility at 550 12th Street SW, in Washington, DC, to provide public comments in a negotiated rulemaking session before the Department's Accreditation and Innovation Committee. Llewellyn Decl. ¶ 2. On arriving at the meeting, Mr. Llewellyn used his cell phone to log onto the Department's guest Wi-Fi network using the password that the Department made available to meeting attendees. *Id*. ¶ 3. When Mr. Llewellyn tried to access Public Citizen's website to review material relevant to his testimony, however, he received an error message on his cell phone stating that accessing www.citizen.org was "in violation of your Internet usage policy." *Id*. ¶ 4. The message also indicated that Public Citizen's web address fell within "Category: Advocacy Organization." *Id*. Mr. Llewellyn was able to use the Department's guest Wi-Fi network to access other websites, including the websites of other advocacy organizations. *Id*. ¶ 5.

Plaintiff David Halperin is a member of Public Citizen. Halperin Decl. ¶ 1. He works on a variety of public-policy issues, including issues related to education policy. *Id.* ¶ 1. As a result, Mr. Halperin frequently visits the Department to attend hearings and negotiated rulemaking sessions and to meet with officials. *Id.* ¶ 2. During those visits, Mr. Halperin uses the Department's guest Wi-Fi network to access Internet web content. *Id.* ¶ 3. Over the last year, however, Mr. Halperin has been unable to access Public Citizen's website through the guest Wi-Fi network. *Id*. Instead, he receives an error message stating that access to www.citizen.org is "in violation of your Internet usage policy," and that Public Citizen's web address falls within "Category: Advocacy Organization." *Id*. Because Mr. Halperin cannot access citizen.org using the guest Wi-Fi network, he is unable to view information that he considers relevant to his visits to ED, such as information

about lawsuits against the Department and information about mandatory arbitration. *Id*. ¶ 4. Mr. Halperin has not been blocked from accessing various other news, government, industry or advocacy websites, except for the streaming website of an Internet-based radio station, which the Department has placed in "Category: Internet Radio and TV." *Id*. ¶¶ 3, 5. Due to the nature of his work, Mr. Halperin expects to visit the Department again and would like to use its guest Wi-Fi network to access Public Citizen's website. *Id*. ¶ 6.

Plaintiffs are unaware of any legitimate reason for the Department to prevent users on its networks from accessing citizen.org. Public Citizen's website imposes no apparent technical burdens on the Department's networks, and it does not contain any content such as electioneering or adult material that might be inappropriate for viewing on federal agency premises. Weissman Decl. ¶ 5. The Department has not explained its Internet usage policy to the public, Llewellyn Decl. ¶ 6, and the Department has refused to disclose its policy in response to a FOIA request submitted by Public Citizen, *id*. ¶ 7, which is the subject of a separate lawsuit. *Public Citizen v. Department of Education*, No. 1:19-cv-01383-APM (D.D.C. filed May 14, 2019). The only hint of an explanation for blocking citizen.org lies in the notice to users that the website belongs to an "Advocacy Organization." Llewellyn Decl. ¶ 4; Halperin Decl. ¶ 4. That notice, however, does not explain why the Department permits users to connect to the websites of other advocacy organizations, as well as those of trade associations and news organizations. *See* Llewellyn Decl. ¶ 5 (listing some of the websites accessed while on the Department's Wi-Fi network); Halperin Decl. ¶ 3.[8]

---

[8] Since filing this lawsuit, Plaintiffs have been told that the Department blocks access to two other websites: www.change.org and www.newamerica.org. Plaintiffs have not had an opportunity to confirm that information.

## ARGUMENT

The Department's action blocking access to citizen.org on its networks violates the First Amendment. This motion seeks a preliminary injunction requiring Defendants to halt their blocking of Public Citizen's website pending final judgment in this case.

To secure a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Each of those considerations supports preliminary injunctive relief in this case. The Department's unexplained and arbitrary decision to prevent users on its networks from accessing citizen.org cannot be reconciled with basic First Amendment principles that prohibit the government from imposing discriminatory burdens on disfavored viewpoints and speakers. Plaintiffs are likely to succeed on the merits of their constitutional claim.

A preliminary injunction is also necessary to prevent ongoing irreparable harm to Public Citizen's First Amendment right to disseminate information to Internet users, including those on the Department's networks, and the concomitant right of users (such as Mr. Halperin) to receive information from Public Citizen. The balance of equities and the public interest support an injunction as well. In contrast to the First Amendment harm suffered by Plaintiffs, the government has no constitutionally legitimate interest in barring network users from accessing citizen.org; and under the First Amendment, the public interest is served when protected speech is allowed to flow unimpeded.

## I.   Plaintiffs are likely to prevail on the merits of their First Amendment claim.

Public Citizen's website speaks about matters of substantial public concern. Using its website, Public Citizen disseminates information about the operations of government, the activities

of public officials, the efficacy of governmental policies in serving citizens and consumers, and the undue influence of corporations and other moneyed interests on the development and implementation of governmental policies. "Speech by citizens on matters of public concern lies at the heart of the First Amendment, which 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' " *Lane v. Franks*, 134 S. Ct. 2369, 2377 (2014) (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)). "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964)). Such speech, therefore, "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Id.* (quoting *Connick v. Myers,* 461 U.S. 138, 145 (1983)). Under the First Amendment, the government cannot restrict "expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015) (quoting *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)).

**A.** Although in traditional and designated public forums, "the government may impose reasonable time, place, and manner restrictions on private speech," any "restrictions based on content must satisfy strict scrutiny, and those based on viewpoint are prohibited." *Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1885 (2018). "Content-based laws" restricting fully protected speech "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 135 S. Ct. at 2226. Likewise, "laws favoring some speakers over others demand strict scrutiny when the [government's] speaker preference reflects a content preference." *Id.* at 2230 (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 658 (1994)).

"Government discrimination among viewpoints" is an even " 'more blatant' and 'egregious form of content discrimination,' " *Reed*, 135 S. Ct. at 2223 (quoting *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)), that "target[s] … speakers and their messages for disfavored treatment," thereby "diminish[ing] the effectiveness" of their speech, *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011). Such laws "run the risk that 'the State has left unburdened those speakers whose messages are in accord with its own views.' " *National Inst. of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361, 2378 (2018) (quoting *Sorrell*, 564 U.S. at 580). Likewise, speech restrictions that are "wildly underinclusive when judged against [their] asserted justification" raise "serious doubts" about whether the government's purpose is to "disfavor[] a particular speaker or viewpoint." *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 802 (2011). Under the First Amendment, "[t]he government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829.

**B.** Plaintiffs are likely to prevail on their claim that the Department's blocking of citizen.org violates these First Amendment principles. By censoring Public Citizen's website on its networks, the Department has engaged in content-based discrimination that cannot survive strict scrutiny. As the Supreme Court has explained, "the most important places … for the exchange of views" today are the " 'vast democratic forums of the Internet.' " *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017) (quoting *Reno v. ACLU*, 521 U.S. 844, 868 (1997)). By " 'surfing' the World Wide Web, … individuals can access material about topics ranging from aardvarks to Zoroastrianism," or "use the Web to read thousands of newspapers published around the globe, purchase tickets for a matinee at the neighborhood movie theater, or follow the progress of any Major League Baseball team on a pitch-by-pitch basis." *Ashcroft v. ACLU*, 535 U.S. 564, 566

(2002). By providing access to the Internet to guests and personnel, the Department enables users to receive a wealth of information from a variety of diverse voices. The Department's decision to block citizen.org, however, means that content from Public Citizen is disfavored on its networks. Furthermore, the error message that users receive, *see* Llewellyn Decl. ¶ 4; Halperin Decl. ¶ 3, indicates that the Department has "singled out" Public Citizen "for disfavored treatment" because it is an advocacy organization. *Entertainment Merchants Ass'n*, 564 U.S. at 802. That classification itself required the Department to "draw[] distinctions based on the message a speaker conveys." *Reed*, 135 S. Ct. at 2227; *id*. ("Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed.").

As a content- or speaker-based speech restriction on fully protected speech, the Department's blocking of citizen.org is "presumptively unconstitutional," unless the Department proves its actions are "narrowly tailored to serve compelling state interests," *Reed*, 135 S. Ct. at 2226. The Department is unlikely to meet that burden here. Public Citizen's website poses no risk of harm to the Department's networks, nor does it contain any content that is inappropriate for a federal work environment. *See* Weissman Decl. ¶ 5. And the Department's error message to users suggests that it has blocked Public Citizen's website because it is an advocacy organization. The Department cannot plausibly prove that shielding guests and personnel from advocacy serves a compelling state interest. Accepting such an assertion would allow content-based suppression of core protected speech for its own sake.

Moreover, the Department's blocking of citizen.org goes beyond content-based regulation and crosses over into forbidden viewpoint discrimination. Public Citizen's website is not an open forum where all comers may post their views on important issues of the day. Rather, Public Citizen's website expresses the organization's point of view. At citizen.org, users can learn about

Public Citizen's efforts to make the government "work for the public, not corporations or industry,"[9] but they would have to go to industry websites such as uschamber.com if they wanted to hear the corporate point of view. Likewise, Public Citizen's website makes the organization's case for an end to enforcement of forced arbitration provisions in contracts with students and other consumers, *see*, *supra*, note 7, but users would have to look elsewhere to find support for for-profit colleges' practice of requiring students to agree at the time of enrollment to arbitrate any disputes that may later arise.

By censoring citizen.org on its networks, the Department necessarily "diminish[es] the effectiveness" of Public Citizen's viewpoint by "target[ing]" it and its "messages for disfavored treatment." *Sorrell*, 564 U.S. at 565. Guests and staff at the Department may visit a host of websites that may or may not contain viewpoints contrary to Public Citizen's. Llewellyn Decl. ¶ 5; Halperin Decl. ¶ 3. But users cannot visit citizen.org to learn about Public Citizen's positions on important issues of public concern, its views of the administration's activities, its comments on proposed rules, its conclusions in the TEACH Grant Report, or its litigation against the Department. The Department has thus done what the First Amendment forbids: "regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Taxpayers for Vincent*, 466 U.S. at 804.

The Department's constitutional violation is compounded by its failure to "articulate some sensible basis for distinguishing what may come in from what must stay out." *Mansky*, 138 S. Ct. at 1888. "[W]ithout standards governing the exercise of discretion, a government official may decide who may speak and who may not based upon the content of the speech or viewpoint of the speaker," creating a "censorship" regime that cannot be reconciled with the First Amendment. *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 763–64 (1988). That appears to be happening

---

[9] https://www.citizen.org/topic/making-government-work/ (last visited May 23, 2019).

here: Public Citizen's website is censored on the Department's networks, while network users can access the websites of other advocacy organizations, including both ideological groups (such as the American Civil Liberties Union) and industry groups (such as the California Association of Private Postsecondary Schools). Llewellyn Decl. ¶ 5. Without constitutionally valid standards to cabin the Department's discretion, the Department arrogates to itself the power to "exclude the expression of certain points of view from the marketplace of ideas," a purpose that is "plainly illegitimate" under the First Amendment. *Taxpayers for Vincent*, 466 U.S. at 804.

**C.** The Department's blocking of Public Citizen's speech cannot be excused on the theory that its networks are nonpublic fora. Although the government "may reserve [a nonpublic] forum 'for its intended purposes, communicative or otherwise,' " the speech restriction must be " 'reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.' " *Mansky*, 138 S. Ct. at 1885 (quoting *Perry Ed. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)). In *Mansky*, the Supreme Court considered a state law that banned "political" apparel inside of polling places. *Id*. at 1883. The Court evaluated whether the state had a "permissible objective" in the restriction, *id*. at 1886, and concluded that the state could "prohibit certain apparel" to "ensure that partisan discord not follow the voter up to the voting booth," *id*. at 1888. The Court concluded, however, that the state acted unreasonably in seeking to distinguish between prohibited and permitted apparel based on "the unmoored use of the term 'political' " and the "haphazard interpretations" of that term by the state. *Id*. Without "objective, workable standards," the Court recognized, "an indeterminate prohibition carries with it 'the opportunity for abuse, especially where it has received a virtually open-ended interpretation.' " *Id*. at 1891 (quoting *Board of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc.,* 482 U.S. 569, 576 (1987) (brackets removed)).

The Department is unlikely to prevail under the standard stated in *Mansky*. An "effort to suppress expression merely because public officials oppose the speaker's view" is not a permissible regulation of a nonpublic forum. *Mansky*, 138 S. Ct. at 1885 (quoting *Perry Ed. Ass'n*, 460 U.S. at 46). And unlike the restriction at issue in *Mansky*, blocking citizen.org is inconsistent with the intended purpose of the Department's decision to provide guests and personnel access to the Internet, including websites pertinent to the work of the Department. And Public Citizen's website poses no burden on the technical capacity of the Department's networks, in the way a heavy-bandwidth site like YouTube might.

Even if the Department could articulate a legitimate purpose for blocking some websites that pose no technical difficulties, the absence of "objective, workable standards" to govern the Department's discretion is fatal to its chances of success, even under nonpublic-forum doctrine. *Mansky*, 138 S. Ct. at 1891. No plausible objective standard can distinguish between the website of Public Citizen and those of the many other organizations whose websites can be accessed on the Department's networks. The classification employed by the error message that users receive— designating Public Citizen an "advocacy organization"—is just as indeterminate as the term "political" that the Supreme Court found wanting in *Mansky*, and just as open to the Department's "own politics." *Id*. How does the Department determine when an organization's message crosses the line from informational to advocacy? How much advocacy does it take for an organization to be considered an advocacy organization under the Department's standard? Are industry sites exempt from the advocacy-organization classification because industry's primary motive is making money? Without a standard "capable of reasoned application," *id*. at 1892, the Department is incapable of "draw[ing] a reasonable line" even under the "forgiving test" applicable to

nonpublic fora. *Id.* at 1888. Plaintiffs are thus likely to prevail on their First Amendment claim regardless of the nature of the forum at issue.

## II.  Plaintiffs will suffer irreparable injury absent a preliminary injunction.

"In First Amendment cases, the likelihood of success will often be the determinative factor in the preliminary injunction analysis," *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016) (*PAG*) (internal quotation marks and citation omitted), because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976); *see also Archdiocese of Washington v. Washington Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (stating that, if appellant had shown a likelihood of success, it would have "prevail[ed] on the final three factors because the loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury") (internal quotation marks omitted).

The Department's blocking of citizen.org thus inflicts irreparable injury on Plaintiffs. Absent a preliminary injunction, Public Citizen will be unable to disseminate information from citizen.org to users on the Department's networks pending final judgment in this litigation. Guests given access to the Department's Wi-Fi network likewise will be unable to receive information from citizen.org in visits to the Department. These restrictions are meaningful. Every day, Department visitors and personnel perform work and take actions in which they use the Internet to obtain relevant information, but relevant information from Public Citizen's website will be inaccessible to them through the Department's networks. Users of the Department's networks likely also engage in ancillary personal use of the Internet. To the extent its website is unavailable on the Department's networks, Public Citizen will be unable to reach them—and they will be unable to receive information from Public Citizen about important and timely issues affecting the Department in particular and government and corporate accountability more generally. Because

Plaintiffs have shown a likelihood of success on the merits, and in light of the First Amendment implications of the Department's actions, a preliminary injunction is necessary to prevent irreparable injury pending final judgment in this case.

### III. The balance of equities and the public interest support issuance of a preliminary injunction.

The balance of equities and the public interest also support granting a preliminary injunction. On Plaintiffs' side, a preliminary injunction would eliminate a substantial harm to Plaintiffs' free-speech rights by preventing the Department from silencing Public Citizen on the Department's networks. An injunction would likewise serve the public interest because the "constitutional guarantee of free speech 'serves significant societal interests' wholly apart from the speaker's interest in self-expression." *Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of California*, 475 U.S. 1, 8 (1986) (quoting *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978)). The Department, on the other hand, has no legitimate interests at stake. Granting a preliminary injunction would not preclude the Department from blocking websites that pose actual harm to the Department's networks or that contain content that it may have a constitutionally acceptable justification for keeping out of the federal work environment. Although granting a preliminary injunction will allow Department personnel and guests access to viewpoints that the Department may disfavor, preventing that access is not a legitimate concern of a federal agency and weighs little against the infringement on Plaintiffs' First Amendment rights.

## CONCLUSION

For the foregoing reasons, the Court should enjoin Defendants from blocking citizen.org on the Department's networks pending final judgment in this case.

May 24, 2019                                          Respectfully submitted,

                                                     /s/ Nandan M. Joshi
                                                     Nandan M. Joshi (DC Bar No. 456750)
                                                     Allison M. Zieve (DC Bar No. 424786)
                                                     Scott L. Nelson (DC Bar No. 413548)
                                                     Public Citizen Litigation Group
                                                     1600 20th Street NW
                                                     Washington, DC 20009
                                                     (202) 588-1000

                                                     *Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PUBLIC CITIZEN, *et al.*,

    Plaintiffs,

    v.

ELISABETH DEVOS, Secretary, U.S.
Department of Education, *et al.*,

    Defendants.

Civil Action No. 1:19-cv-986-RDM

**[PROPOSED] ORDER**

    Plaintiffs' motion for a preliminary injunction is GRANTED. Defendants are preliminarily enjoined from preventing users of the Department of Education's networks from accessing the URL www.citizen.org and other pages on Public Citizen's website.

Dated _____, 2019

By _____
RANDOLPH D. MOSS
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

PUBLIC CITIZEN, *et al.*,

   Plaintiffs,

   v.

ELISABETH DEVOS, Secretary, U.S.
Department of Education, *et al.*,

   Defendants.

---

Civil Action No. 1:19-cv-986-RDM

**DECLARATION OF ROBERT WEISSMAN**

I, Robert Weisman, declare as follows:

   1.    I am the President of Public Citizen and Public Citizen Foundation (collectively, Public Citizen). I have held that position since September 2009.

   2.    Public Citizen is a non-profit public-interest organization founded in 1971. As reflected on Public Citizen's public-facing website (www.citizen.org/about), the organization's mission is to champion the public interest in the halls of power by defending democracy, resisting corporate power and working to ensure that government works for the people. Public Citizen has approximately half a million members throughout the nation. Public Citizen works before Congress, regulatory agencies, and the courts to advance the interests of its members and to educate the public on a wide range of consumer-protection issues, including consumer rights in the marketplace, financial regulation, and corporate accountability.

   3.    Public Citizen works to promote openness in government and collects and disseminates information related to governmental actions and practices. Public Citizen also authors reports that address federal agencies' implementation of their statutory responsibilities.

4.     Public Citizen relies on its website at www.citizen.org to disseminate information about the organization's activities to its members, policymakers, the media, and the general public. Public Citizen does not restrict who may access the information contained on its public-facing website.

5.     Public Citizen revamped its website on May 5, 2019. To my knowledge, neither Public Citizen's former website nor its current one: (1) imposes any technical burdens on Internet access networks that is out of the ordinary for websites generally or for websites of non-profit organizations in particular; (2) has posted content that involves partisan political activities or the endorsement of any candidates for public office; or (3) has posted adult content or other content that is customarily regarded to be inappropriate for accessing in a workplace environment.

Executed on May 22, 2019.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


/s/ Robert Weissman
Robert Weissman

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PUBLIC CITIZEN, *et al.*,

    Plaintiffs,

    v.

ELISABETH DEVOS, Secretary, U.S.
Department of Education, *et al.*,

    Defendants.

Civil Action No. 1:19-cv-986-RDM

**DECLARATION OF PATRICK D. LLEWELLYN**

I, Patrick D. Llewellyn, declare as follows:

    1.    I am an attorney at Public Citizen.

    2.    On February 22, 2019, I attended a negotiated rulemaking session at the Department of Education (ED) facility located at 550 12th Street SW, Washington, DC. I attended that session to provide a public comment to ED's Accreditation and Innovation Committee about proposed changes to ED's regulations concerning the Teacher Education Assistance for College and Higher Education (TEACH) Grant program.

    3.    While attending the negotiated rulemaking session, I logged my cell phone onto ED's guest Wi-Fi network using the password provided by ED.

    4.    While logged on to the guest Wi-Fi network, I attempted to navigate to www.citizen.org to access material on Public Citizen's website relevant to my public comment at ED. Specifically, I attempted to access the electronic version of Public Citizen's report on ED's mismanagement of the TEACH Grant program. *See* Public Citizen, *Rewriting the TEACH Grant Rules: Lessons from a History of Mismanagement* (Dec. 2018), https://www.citizen.org/wp-

content/uploads/teach_report.pdf. I was unable to access Public Citizen's website using ED's guest Wi-Fi network. Instead, I received a message indicating that access to "URL: www.citizen.org/" is "in violation of your Internet usage policy." The message also stated that Public Citizen's web address fell within "Category: Advocacy Organizations." Attachment 1 to this declaration is a true and accurate copy of the message that appeared on my cell phone screen.

5.     Although I was unable to access citizen.org, I was able to access numerous websites, including the websites of the following organizations:  the U.S. Chamber of Commerce, the American Civil Liberties Union, the California Association of Postsecondary Schools, the Center for Responsible Lending, the National Consumer Law Center, the Project on Predatory Student Lending at the Legal Services Center of Harvard Law School, the Center for American Progress, The Institute for College Access and Success, and Washington Legal Foundation.

6.     I have searched ED's public-facing website (www.ed.gov) for information about the agency's Internet usage policy that would explain why ED prevents users from accessing Public Citizen's website. I have located no such policy on ED's website.

7.     In February 2019, on behalf of Public Citizen, I submitted a request under the Freedom of Information Act (FOIA) seeking documents regarding ED's Internet usage policy. ED responded to my FOIA request by stating that responsive documents were available on its public-facing website. I administratively appealed that determination because the webpages it identified were not responsive to my FOIA request. ED failed to act on my appeal within the statutory deadline for doing so.

Executed on May 22, 2019.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Patrick D. Llewellyn

DECLARATION OF PATRICK D. LLEWELLYN
ATTACHMENT 1



### Web Access Webguard Filter Violation
### GENKDCA-FGATA0

You have tried to access a web page which is in violation of your Internet usage policy. Please contact your network administrator for assistance at edguestwireless@ed.gov

URL: www.citizen.org/
Category: Advocacy Organizations



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PUBLIC CITIZEN, *et al.*,

    Plaintiffs,

    v.

ELISABETH DEVOS, Secretary, U.S.
Department of Education, *et al.*,

    Defendants.

Civil Action No. 1:19-cv-986-RDM

**DECLARATION OF DAVID HALPERIN**

I, David Halperin, declare as follows:

1.    I am a Washington, D.C.-based lawyer. I engage in public advocacy work on a wide range of issues, and I have for about ten years spent a significant amount of time working on issues concerning higher education. I also advise organizations on strategy, policy, communications, and legal matters. I write for a website called Republic Report, where I post articles on a wide range of issues, including issues concerning education policy and the work of the Department of Education. I am a member of Public Citizen and a board member of Public Citizen Foundation.

2.    Because of my work on education policy issues, I am a frequent visitor to the U.S. Department of Education (ED), which has its main headquarters at 400 Maryland Ave. SW, Washington, D.C., 20202 and other buildings in Washington, D.C. I visit ED to meet with Department officials and staff, and to attend hearings and negotiated rulemaking sessions.  I estimate that I have visited various buildings in Washington, D.C., where ED staff and facilities are located, more than 70 times since 2010.

3.     When I visit ED, I often utilize the guest Wi-Fi service that ED makes available to visitors. Using ED's guest Wi-Fi network, I have successfully visited numerous Internet websites, including news sites, government sites, the websites of colleges and businesses, and the sites of numerous public policy and advocacy organizations. For at least the last year, however, I have been unable to use ED's guest Wi-Fi network to access Public Citizen's website, whose Uniform Resource Locator (URL) is citizen.org. When attempting to do so, I receive a message that states that access to Public Citizen's website "is in violation of your Internet usage policy." The message also states that Public Citizen's web address falls within "Category: Advocacy Organization." Attachment 1 to this declaration is a true and accurate copy of the message that I received when attempting to access citizen.org during a visit to ED on March 25, 2019.

4.     Public Citizen's website contains information relevant to my visits to ED. For example, Public Citizen's litigation group has filed lawsuits against the Department of Education, and also has represented parties as amici curiae supporting the position of the Department of Education, and when visiting the Department I have sought to access material about these lawsuits, including legal filings, from Public Citizen's website. Public Citizen's website also has useful information on the issue of mandatory arbitration, an issue that has been a major focus of numerous negotiated rulemaking meetings, held at Department buildings, on ED's borrower defense regulation.

5.     On a visit to ED on March 25, 2019, I tried to access a wide range of websites to find another that was blocked. The only other website I was unable to access through ED's guest Wi-Fi network was the website of 937thefan.radio.com, on which I was attempting to stream a video. The error message I received indicated that this website fell within "Category: Internet Radio and TV." Attachment 2 to this declaration is a true and accurate copy of the message that I

received when attempting to access 937thefan.radio.com during a visit to ED on March 25, 2019.

6.     Because of the nature of my work on education policy, I expect to visit ED again. During those visits, I would like to be able to use ED's guest Wi-Fi network to access Public Citizen's website. I also believe that other users of ED's guest Wi-Fi network—including my colleagues who work for veterans, consumer, student, and education policy organizations and advocate for students; representatives of schools, accreditors, and industries; and members of the news media—should have the benefit of access to Public Citizen's website while participating in meetings and hearings at ED.

Executed on May 23, 2019.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

David Halperin

DECLARATION OF DAVID HALPERIN
ATTACHMENT 1

**Web Access Webguard Filter Violation**
**GENKDCA-FGATA0**

You have tried to access a web page which is in violation of your Internet usage policy. Please contact your network administrator for assistance at edguestwireless@ed.gov

URL: citizen.org/
Category: Advocacy Organizations

DECLARATION OF DAVID HALPERIN
ATTACHMENT 2

**Web Access Webguard Filter Violation**
**GENKDCA-FGATA0**

You have tried to access a web page which is in violation of your Internet usage policy. Please contact your network administrator for assistance at edguestwireless@ed.gov

URL: 937thefan.radio.com/
Category: Internet Radio and TV

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

PUBLIC CITIZEN, *et al.*,

    Plaintiffs,

    v.

ELISABETH DEVOS, Secretary, U.S.
Department of Education, *et al.*,

    Defendants.

Civil Action No. 1:19-cv-986-RDM

## CERTIFICATE OF SERVICE

I hereby certify that, on this 24th day of May, 2019, I served true and correct copies of Plaintiffs' Motion for a Preliminary Injunction; the Memorandum of Points and Authorities in Support of Plaintiffs' Motion for a Preliminary Injunction; declarations by Robert Weissman, Patrick Llewellyn, and David Halperin; and a proposed order, filed concurrently herewith, on the defendants in this action by certified mail to the following addresses:

Jessie K. Liu, U.S. Attorney, District of Columbia
Civil Process Clerk
United States Attorney's Office
555 Fourth Street, NW
Washington, D.C. 20530

William Barr, Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Elizabeth DeVos, in her official capacity as Secretary of Education
U. S. Department of Education
Office of General Counsel
400 Maryland Avenue, SW
Room 6E300
Washington, DC 20202-2111

U. S. Department of Education
Office of General Counsel
400 Maryland Avenue, SW
Room 6E300
Washington, DC 20202-2111


Dated: May 24, 2019                          /s/ Nandan M. Joshi
                                             Nandan M. Joshi

                                             *Counsel for Plaintiffs*